## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**POTENTIUM CONSULTANTS LLC; a Wisconsin Limited Liability Company; and ADAM HOUTMAN, an individual,**

> **Plaintiffs,**

**v.**

**DAN STRAUSE; HOMETOWN PHARMACY PARTNERSHIPS LLC; HOMETOWN PHARMACY PARTNERSHIPS II LLC; HOMETOWN STORE SERVICES LLC; THE MD GROUP, LLC; and MD GROUP II, LLC,**

> **Defendants.**

**Case No.:**

---

### PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Plaintiffs Potentium Consultants LLC ( "**Potentium**") and Adam Houtman ("**Mr. Houtman**") (each individually referred to as "**Plaintiff**" and collectively as "**Plaintiffs**") by and through their undersigned counsel, for their Original Complaint for damages (the "**Complaint**") against Defendants Dan Strause ("**Mr. Strause**"), Hometown Pharmacy Partnerships LLC ("**HPP**"), Hometown Pharmacy Partnerships II LLC ("**HPP II**"), Hometown Store Services LLC ("**HSS**"), The MD Group, LLC ("**MDG**"), and MD Group II, LLC ("**MDG II**") (collectively referred to as "**Defendants**" or the "**Company**") and respectfully alleges as follows:

### THE PARTIES

1.     Plaintiff Potentium Consultants LLC is a Wisconsin domestic limited liability company whose members are citizens of the State of Texas. Furthermore, Potentium's principal

place of business at all times relevant to this action has been located at 3005 S. Lamar Boulevard, Suite D109 245, Austin, Texas 78704. Potentium is represented by the undersigned counsel.

2.      Plaintiff Adam Houtman is an individual citizen of the State of Texas, residing in Austin, Texas and represented by the undersigned counsel. Mr. Houtman is the managing member and principal owner of Potentium.

3.      Defendant Dan Strause is an individual residing in Rio, Wisconsin who may be personally served with process at W3820 County Road B, Rio, Wisconsin, 53960 or wherever he may be found.

4.      Defendant Hometown Pharmacy Partnerships LLC is a Wisconsin domestic limited liability company with its principal place of business located at 333 Lowville Road, Rio, WI 53960-947. It may be served through its registered agent, Daniel G. Strause at the same address.

5.      Defendant Hometown Pharmacy Partnerships II LLC is a Wisconsin domestic limited liability company with its principal place of business located at 333 Lowville Road, Rio, WI 53960-947. It may be served through its registered agent, Daniel G. Strause at the same address.

6.      Defendant Hometown Store Services LLC is a Wisconsin domestic limited liability company with its principal place of business located at 333 Lowville Road, Rio, WI 53960-947. It may be served through its registered agent, Daniel G. Strause at the same address.

7.      Defendant The MD Group, LLC is a Wisconsin domestic limited liability company with its principal place of business located at 333 Lowville Road, Rio, WI 53960-947. It may be served through its registered agent, Daniel G. Strause at the same address.

8.      Defendant The MD Group II, LLC is a Wisconsin domestic limited liability company with its principal place of business located at 333 Lowville Road, Rio, WI 53960-947. It may be served through its registered agent, Daniel G. Strause at the same address.

## ALTER EGO AND SINGLE BUSINESS ENTERPRISE ALLEGATIONS

9.     Upon information and belief, Defendants HPP, HPP II, HSS, MDG, and MDG II are collectively referred to herein as the "**Hometown Entities**." The Hometown Entities are so dominated and controlled by Mr. Strause that they function as a single business enterprise, lack corporate independence, and serve as mere instrumentalities or alter egos of one another and of Mr. Strause.

10.     All Hometown Entities share a common registered agent (Mr. Strause), principal office address, financial management, and ownership structure. Upon information and belief, all Hometown Entities are managed by the same small group of individuals controlled by Mr. Strause and act at his direction.

11.     Upon information and belief, the Hometown Entities fail to follow basic corporate formalities. They do not maintain truly separate boards or governance processes, and material decisions regarding all Hometown Entities—including compensation, distributions, borrowing, and major expenditures—are made unilaterally by Mr. Strause without separate entity-level approvals or deliberations.

12.     Upon information and belief, the Hometown Entities share bank accounts and/or freely transfer funds between one another at the direction of Mr. Strause without documentation, adequate consideration, or arm's-length terms, and use common accounting systems and records in a way that obscures which entity actually owns or controls particular funds or assets.

13.     Additionally, upon information and belief, the Hometown Entities and Mr. Strause commingle assets and funds, including using entity funds to pay for personal expenses of Mr. Strause such as personal vehicles and other non-business expenditures, and failing to consistently record such transactions as loans, compensation, or distributions.

14.    Upon information and belief, the Hometown Entities are inadequately capitalized in light of the scope of their operations and obligations, and Mr. Strause has caused company funds to be diverted for his own benefit rather than used to meet contractual obligations to Plaintiffs and other stakeholders.

15.    The Hometown Entities all benefitted from and were parties to, or performance beneficiaries of, the Consulting Agreement and the services provided by Plaintiffs, yet now collectively deny responsibility for the obligations owed under that Agreement while simultaneously treating themselves as a single integrated enterprise for operational and financial purposes.

16.    The corporate form of the Hometown Entities has therefore been used as a façade to perpetrate a fraud and to evade legal obligations owed to Plaintiffs, including but not limited to obligations to pay earned compensation, bonuses, and to deliver vested equity. Adhering to the corporate fiction in these circumstances would sanction fraud and promote injustice.

17.    Accordingly, Plaintiffs seek to pierce the corporate veil and hold each Defendant—HPP, HPP II, HSS, MDG, and MDG II—and Mr. Strause jointly and severally liable for the obligations alleged herein.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Potentium Consultants LLC is a limited liability company whose members are all citizens of Texas, and Potentium's principal place of business is located in Texas—not Wisconsin. Under federal law, the citizenship of a limited liability company or "LLC" is determined by the citizenship of each of its members, not by the

state of organization or principal place of business. *See Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691 (7th Cir. 2003).

19.     The Court also has personal jurisdiction over all Defendants. Specific jurisdiction exists because Defendants purposefully availed themselves of Wisconsin law by entering into a Consulting Agreement governed by Wisconsin law, directing executive functions and business operations from Wisconsin, and maintaining continuous and systematic business contacts with Wisconsin that give rise to Plaintiffs' claims.

20.     Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Consulting Agreement at issue is expressly governed by Wisconsin law. Additionally, the parties agreed that Wisconsin law would govern their contractual relationship, making this forum appropriate and convenient for adjudicating this dispute.

## FACTUAL BACKGROUND

### A.     Consulting Agreement

21.     On or about September 20, 2023, Potentium and the Company entered into a Consulting Agreement (the "**Consulting Agreement**"). A true and correct copy of the Consulting Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

22.     Pursuant to the Consulting Agreement, Mr. Houtman, acting through Potentium, served as a consultant to the Company. *Id.*

### i.     *Compensation and Equity Bonus*

23.     Section 2(d) of the Consulting Agreement provides that Potentium's compensation was to be based on the profitability of pharmacies in the Company's portfolio, meaning compensation would vary month-to-month. In addition, Section 2(d) entitles Potentium to an

equity bonus equal to five percent (5%) of the equity in all Hometown entities—2.5% vesting on the one-year anniversary of the Consulting Agreement and 2.5% vesting on the eighteen-month anniversary. *Id.*

24.    Furthermore, Section 2(d) of the Consulting Agreement also provides that Potentium receive a performance bonus equal to 10% of each of Hometown Pharmacy Partnerships LLC and Hometown Store Services LLC's quarterly Net Profits. *Id.*

### ii.    *Termination Provisions*

25.    According to Section 4(a) of the Consulting Agreement, titled, *Termination by the Company for Cause or Non-Renewal of Agreement or Termination by the Consultant without Good Reason, Death or Disability*, provides that if the Consulting Agreement is terminated for "Cause" (as defined therein), or if it ends due to death, disability, or voluntary termination by Potentium without good reason, then Potentium is only entitled to earned but unpaid compensation, with no "severance benefits" owed.  *Id.*

26.    Subsection 4(e)(ii) defines "Cause" to include, among other things, failure to perform essential job functions, material misconduct, fraud, breach of the Agreement, or acts of moral turpitude. However, the Agreement mandates that for all curable conduct, the Company must first provide thirty (30) days' written notice of intent to terminate and an opportunity to cure. Only conduct enumerated in subsections (iii), (vi), (vii), and (viii) qualifies for immediate termination.

### iii.    *No Written Modification*

27.    Further, Section 6(d) of the Consulting Agreement provides that no provision of the Agreement may be modified, waived, or discharged unless in writing and signed by both the

Consultant and an authorized officer or member of the Company. *Id.* Specifically, Section 6(d) provides:

> d.    **Modification.** No provision of this Agreement may be modified, waived, or discharged unless such modification, waiver, or discharge is agreed to in writing and signed by the Consultant and by an authorized officer or authorized member of the Company on the Company's behalf, or by the respective parties' legal representatives or successors.

*Id.*

28.    No such written modification has occurred.

**B.    Employment Agreement**

29.    In June 2024, Mr. Houtman entered into a separate unwritten employment agreement with the Company and began serving as a W-2 employee in the role of Chief Executive Officer ("**CEO**").

30.    Mr. Houtman's onboarding was conducted with the knowledge and express consent of Mr. Strause, who authorized Mr. Houtman's placement on payroll with the Company's Payroll Department at a salary of $10,000.00 per month.

31.    In January 2025, Mr. Strause again reaffirmed Mr. Houtman's employment as a W-2 employee when he instructed the Company's Payroll Department to increase Mr. Houtman's salary from $10,000.00 per month to $20,000.00 per month.

**C.    Unlawful Termination Attempt**

32.    On April 3, 2025, the Company issued a letter purporting to terminate the Consulting Agreement only, without addressing Mr. Houtman's employment status as CEO or following any lawful termination process. A copy of the April 3, 2025 letter, sent by Farrow Legal on behalf of the Company, is attached hereto as **Exhibit B** and incorporated herein by reference.

33. However, the April 3, 2025 letter did not effectuate a lawful termination of Mr. Houtman's employment, as it failed to comply with any procedure required under applicable employment law or Hometown Pharmacy Partnerships LLC's Operating Agreement. As such, Mr. Houtman remains the de jure CEO and is entitled to full compensation.

**D.  Mr. Strause's Unlawful Acts.**

34. Mr. Strause serves as the Chairman of the Board of Directors and Majority Shareholder of the Company.

35. While serving as the Chairman of the Board of Directors and Majority Shareholder, Mr. Strause misappropriated Company funds on multiple accounts. For instance, Mr. Strause uses Company funds to finance his own personal cars. Furthermore, Mr. Strause has failed to pay distributions to the partners and has restricted partners from having access to their bank accounts. As a result of Mr. Strause's misappropriation of Company funds, this led to lower cash available to pay 10% of each of Hometown Pharmacy Partnerships LLC and Hometown Store Services LLC's quarterly Net Profits, as well as monthly reimbursements, and distributions.

36. As stated above, Mr. Strause also authorized Mr. Houtman's placement on the Company payroll with the Company's Payroll Department and then later instructed the Company's Payroll Department to increase Mr. Houtman's salary from $10,000 per month to $20,000 per month.

37. Despite Mr. Strause's authorized and later instruction, Mr. Strause has claimed that Mr. Houtman's wages are "illegitimate", and later unlawfully terminated Mr. Houtman as CEO of the Company. Mr. Strause, as a director, owes Mr. Houtman fiduciary duties of care and loyalty, which were breached.

**E.    Breach of the Consulting Agreement**

38.    The April 3, 2025 letter sent by the Company makes sweeping accusations against Mr. Houtman, including:

- Failure to perform essential job functions;

- Disregard of board directives;

- Unspecified misconduct, fraud, and dishonesty;

- Misappropriation of confidential information and funds;

- Conflicts of interest; and

- Violation of restrictive covenants.

39.    These allegations appear to be a verbatim recitation of the "Cause" provisions under the Consulting Agreement. However, the letter is devoid of any factual basis—lacking specific incidents, dates, documentation, or communications. Allegations of such gravity require specificity if not evidence—not boilerplate.

40.    The Company's attempt to terminate the Consulting Agreement immediately, without adhering to the contractual requirement of a 30-day cure period or obtaining a written modification, constitutes a material breach.

41.    Soon after sending the termination letter, the Company, through counsel agreed to provide a detailed list of Mr. Houtman's alleged misconduct justifying termination along with supporting documentation. To date, no such list or documentation has been provided.

**F.    Breach of the Employment Agreement**

42.    The Company's April 3, 2025, letter omits any reference to Mr. Houtman's employment as CEO and failed to follow any required procedures to terminate his employment. No notice, investigation, or formal termination process occurred. As a result, the Company's

failure to pay Mr. Houtman his wages constitutes a clear breach of contract and a violation of Wisconsin labor laws.

43.     Mr. Houtman is owed unpaid wages for a total of twelve (12) months totaling $240,000.

**G.    Failure to Deliver Vested Equity**

44.     Section 2(d)(i) of the Consulting Agreement expressly provides that Potentium, is entitled to an equity bonus equal to five percent (5%) of the equity in all Hometown entities—2.5% vesting on the one-year anniversary of the Agreement and an additional 2.5% vesting on the eighteen-month anniversary. *See* **Ex. A**. The relevant language provides:

> "Unless this Agreement is **earlier** terminated pursuant to Section 4.a., below, the Consultant shall receive an equity bonus in the amount of a 5% equity share in all of the Hometown entities …" (emphasis added).

*45.     Id.*

46.     Section 4(a) of the Consulting Agreement states that termination for Cause, death or disability, or voluntary resignation without Good Reason affects entitlement to severance benefits and earned compensation. *Id.* However, the provision does not retroactively nullify already vested equity.

47.     The Company did not terminate the Consulting Agreement prior to the March 23, 2025, vesting date. To the contrary, the purported termination letter is dated April 3, 2025—eleven days after full vesting occurred.

48.     The equity bonus is tied solely to the passage of time and continued engagement—not to performance goals. Accordingly, even assuming arguendo that the termination for Cause was valid (which Plaintiffs dispute), Potentium's equity bonus had fully vested prior to

termination, and the Company remains contractually obligated to deliver the five percent (5%) equity interest.

49.    Plaintiffs hereby demand immediate issuance and documentation of Potentium's 5% equity share in all Hometown entities. The Company's failure to deliver the vested equity constitutes a clear breach of the Consulting Agreement and gives rise to additional legal and equitable remedies.

## H.    Plaintiffs' Demands and Damages

50.    The Company has materially breached both the Consulting Agreement and the Employment Agreement. As a result, Plaintiffs have incurred damages totaling $1,016,500. These damages include but are not limited to past unpaid profits, future profit payments, past earned 10% bonuses per the Consulting Agreement, and Mr. Houtman's salary.

51.    Accordingly, Plaintiffs demand all documents, correspondence, and records supporting the Company's "Cause" allegations, including but not limited to the Company's most recent tax filings pursuant to Wis. Stat. § 183.0405.

52.    Pursuant to Section 2(d) of the Consulting Agreement, Potentium's five percent (5%) equity interest vested fully on March 23, 2025. *Id.* Therefore, Plaintiffs hereby demand immediate delivery of Potentium's five percent (5%) equity share in all Hometown entities.

53.    As a direct and proximate result of the Company's wrongful conduct—including breach of contract, failure to pay earned wages, and failure to transfer vested equity—Plaintiffs have suffered and will continue to suffer damages unless and until all owed compensation and equity interests are delivered.

## <u>FIRST CAUSE OF ACTION</u>

### (Breach of Contract – Potentium v. Company)

54.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

55.    Mr. Houtman conferred substantial benefits upon the Company by serving as its Chief Executive Officer.

56.    The Company knowingly accepted these services and compensated Mr. Houtman as a W-2 employee until April 3, 2025.

57.    Potentium fully performed its obligations under the Consulting Agreement.

58.    The Company breached the Agreement by (1) failing to provide the contractually required 30 days' written notice of intent to terminate for Cause, and (2) denying Potentium the opportunity to cure any alleged deficiencies. Potentium has suffered substantial economic damages as a result, which continue to accrue.

59.    The Company's breach is material and without legal justification or excuse.

60.    As a direct and proximate result of the Company's breach, Potentium has suffered damages of no less than $1,016,500.00, exclusive of attorneys' fees, litigation costs, and interest.

61.    Potentium will continue to incur additional damages unless and until the Company cures its breach and compensates Potentium in full.

## SECOND CAUSE OF ACTION

### (Breach of Implied Contract – Mr. Houtman v. Company)

62.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

63.     Mr. Houtman conferred substantial benefit to the Company by serving as CEO.

64.    The Company knowingly accepted this benefit and compensated him for it up until April 3, 2025.

65.     An implied contract arose by virtue of this arrangement, which the Company breached by ceasing payment without lawful termination or notice.

66.     As a direct and proximate result of the Company's breach of the implied contract, Mr. Houtman has suffered damages in an amount to be determined at trial, exclusive of attorneys' fees, costs, and interest.

67.     Mr. Houtman continues to suffer economic harm due to the Company's failure to honor the implied employment contract.

## THIRD CAUSE OF ACTION

### (Breach of Contract – Failure to Deliver Vested Equity: Plaintiffs v. Company)

68.     Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

69.     Potentium and Defendants entered into a valid and enforceable Consulting Agreement.

70.     Section 2(d)(i) of the Consulting Agreement provides that Potentium is entitled to a five percent (5%) equity share in all Hometown entities, with 2.5% vesting on the one-year anniversary and an additional 2.5% vesting on the eighteen-month anniversary. *See* **Ex. A**.

71.     Section 4(a) of the Consulting Agreement conditions equity entitlement only on termination for cause, death, disability, or voluntary termination without good reason occurring prior to vesting. *Id.*

72.     Potentium's equity shares fully vested on March 23, 2025.

73.     Potentium's contractual relationship with the Company was not terminated for cause or otherwise subject to Section 4(a) prior to the vesting date.

74.     Defendants have failed and refused to deliver the vested equity shares to Potentium.

75.     Defendants' refusal constitutes a material breach of the Consulting Agreement.

76.     As a direct and proximate result, Plaintiffs have suffered damages including but not limited to the fair market value of the five percent (5%) equity interest, the loss of ownership rights, and the loss of distributions and other benefits tied to the equity.

## FOURTH CAUSE OF ACTION

### (Money Had and Received – Potentium v. Company)

77.     Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

78.     The Company currently holds funds that, in equity and good conscience, belong to Potentium. Potentium is entitled to recover these funds in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment – Potentium v. Company)

79.     Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

80.     In the alternative to the breach of contract claim, the Company made clear and unambiguous promises to compensate Potentium in accordance with the terms of the Consulting Agreement.

81.     Potentium reasonably relied on the Company's promises and performed under the Agreement in reliance on those promises.

82.     The Company's enrichment at Potentium's expense was both foreseeable and unjust.

83.    Equity demands that Potentium be compensated for the value of services rendered, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Unjust Enrichment – Mr. Houtman v. Company)

84.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

85.    In the alternative to the implied contract claim, the Company made clear and unambiguous promises to compensate Mr. Houtman for his services as CEO.

86.    Mr. Houtman reasonably relied on these promises and performed substantial executive duties in reliance thereon.

87.    The Company's benefit from Mr. Houtman's services—without just compensation—is unjust and inequitable.

88.    Injustice can only be avoided by awarding Mr. Houtman monetary damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### (Breach of Fiduciary Duty – Mr. Houtman v. Mr. Strause)

89.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

90.    At all relevant times, Mr. Strause served as a Director and Officer of the Company. As a Director and Officer, Mr. Strause owed fiduciary duties of care and loyalty to the Company and its Members of the Board of Directors.

91.    Wisconsin courts recognize that "[d]irectors and officers of a corporation occupy a fiduciary relation to the corporation and its stockholders, and must act in good faith and with due

regard for the interests of the corporation." *Read v. Read*, 205 Wis. 2d 558, 566, 556 N.W.2d 768 (Ct. App. 1996).

92.    Wisconsin law further requires directors to act in good faith and in the best interests of the entity, not for their own benefit. *Notz v. Everett Smith Group, Ltd.*, 2009 WI 30, ¶20, 316 Wis. 2d 640, 764 N.W.2d 904 (self-dealing is a breach of fiduciary duty when the fiduciary appropriates a corporate opportunity or otherwise benefits personally to the detriment of the corporation).

93.    Section 4.03 of the Operating Agreement expressly provides that "[a]ny officer or agent may be removed by majority vote of the Board of Directors whenever, in its judgment, the best interests of the Company will be served thereby."

94.    Despite these requirements, Mr. Strause unilaterally sent a letter purporting to remove Mr. Houtman from his position as CEO. No meeting of the Board of Directors was called or held to consider Mr. Houtman's removal as CEO, and no vote of the Board of Directors was taken.

95.    By taking this action without authority, Mr. Strause usurped the power of the Board of Directors, disregarded the Operating Agreement, and sent an unlawful removal letter that was reckless, unauthorized, and done in bad faith.

96.    Therefore, as a direct and proximate cause of Mr. Strause's wrongful acts and self-dealing, Mr. Houtman suffered injury and injustice that can only be avoided by awarding Mr. Houtman monetary damages in an amount to be determined at trial.

## <u>EIGHTH CAUSE OF ACTION</u>

**(Shareholder Derivative Claim – Potentium on Behalf of the Company)**

97.     Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

98.     Potentium is a shareholder and member of the Company by virtue of its fully vested five percent (5%) equity interest, which vested no later than March 23, 2025, under the express terms of the Consulting Agreement.

99.     Under Wisconsin law, when the alleged wrong is primarily against the company, the cause of action belongs to the company, and shareholders may assert such claims derivatively. *Rose v. Schantz*, 56 Wis. 2d 222, 229, 201 N.W.2d 593 (1972).

100.     The acts of Mr. Strause — including diversion of company funds, restriction of member access to bank accounts, and refusal to pay distributions and reimbursements — constitute direct harm to the Company as an entity.

101.     Accordingly, Potentium brings the ninth and tenth causes of action derivatively, on behalf of the Company, against Mr. Strause.

## NINTH CAUSE OF ACTION

### (Derivative Claim - Conversion: Potentium on Behalf of the Company v. Mr. Strause)

102.     Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

103.     The Company's funds belonged to the Company and its Members and were required to be used for legitimate business purposes, including quarterly profit distributions, reimbursements, and payroll.

104.     Mr. Strause intentionally diverted and used Company funds for his own personal benefit, including but not limited to financing personal vehicles, restricting access to Company bank accounts, and failing to distribute quarterly net profits.

105.    Under Wisconsin law, conversion is defined as "the intentional control or taking of property belonging to another without the owner's consent, which seriously interferes with the rights of the owner to possess the property." *Prod. Credit Ass'n v. Equity Coop. Livestock Sales Ass'n*, 82 Wis. 2d 5, 12, 261 N.W.2d 127 (1978).

106.    By using Company assets for his personal benefit and denying the Company's lawful uses of its funds, Mr. Strause engaged in conversion of Company property.

107.    As a direct and proximate result of Mr. Strause's actions, the Company has suffered substantial damages, including depletion of assets and inability to fulfill contractual and statutory obligations.

108.    Pre-suit demand on the Company's Board of Directors to initiate this action would be futile because Mr. Strause controls the board and is personally implicated in the challenged misconduct.

## TENTH CAUSE OF ACTION

### (Derivative Claim – Civil Theft/ Embezzlement: Potentium on Behalf of the Company v. Mr. Strause)

109.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

110.    Mr. Strause intentionally misappropriated and embezzled Company funds for his own personal benefit, including financing personal vehicles and depriving the Company of assets necessary to make distributions and reimbursements.

111.    Such conduct constitutes theft under Wisconsin Statute § 943.20 and gives rise to a civil cause of action under Wisconsin Statute § 895.446. Mr. Strause acted without authorization, without the Company's consent, and with intent to permanently deprive the Company of its funds.

112.    The Company has suffered damages by reason of Mr. Strause's intentional theft and embezzlement.

113.    The Wisconsin Supreme Court has confirmed that § 895.446 creates a private civil remedy for theft, embezzlement, and misappropriation of funds. *Cognex Corp. v. VCode Holdings, Inc.*, 2003 WI App 178, ¶18, 266 Wis. 2d 1060, 669 N.W.2d 573 (recognizing that Wis. Stat. § 895.446 creates a civil cause of action for theft under Wisconsin Statute § 943.20 where a defendant intentionally takes and retains another's property without consent and with intent to convert it to the defendant's own use).

114.    Therefore, Potentium, derivatively on behalf of the Company, seeks recovery of all available remedies under Wisconsin Statute § 895.446, including treble damages, attorneys' fees, costs of investigation and litigation, and disgorgement of all funds wrongfully taken by Mr. Strause.

## ELEVENTH CAUSE OF ACTION

### (Fraudulent Misrepresentation – Plaintiffs v. Mr. Strause)

115.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

116.    Under Wisconsin law, fraudulent misrepresentation (common-law fraud) occurs when: (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his detriment. *Kaloti Enterprises, Inc. v. Kellogg Sales Co.,* 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 569, 699 N.W.2d 205, 211.

117.    On or about September 2023, during negotiations leading up to the execution of the Consulting Agreement, in telephone calls and/or meetings between Plaintiffs and Mr. Strause Mr. Strause expressly represented to Plaintiffs that: (a) if Plaintiffs entered into the Consulting Agreement, Potentium would receive the 5% equity bonus described in Section 2(d) upon the passage of the stated vesting periods; (b) Potentium would be paid the 10% profit-based bonuses and other compensation set forth in the Agreement; and (c) the Company had both the present intention and the financial ability to make such payments in accordance with the Agreement.

118.    On or about January 2025, when directing that Mr. Houtman's salary be increased from $10,000 to $20,000 per month, including communications with the Company's payroll department and communications relayed to Mr. Houtman, Mr. Strause further represented that the increase had been formally approved, was proper and legitimate, and that the Company would continue to pay that salary going forward in consideration for Mr. Houtman's continued service as CEO.

119.    At the time he made the representations described in Paragraphs 116–117, upon information and belief, Mr. Strause knew that he did not intend for the Company to honor the Consulting Agreement or the employment commitments in full, and/or knew that he intended later to characterize Plaintiffs' wages as "illegitimate," deny or avoid payment of compensation, and withhold vested equity and bonuses.

120.    At the time of these representations, upon information and belief, Mr. Strause was also actively diverting and misappropriating Company funds for his own personal benefit, failing to pay distributions and restricting member access to bank accounts, and he knowingly concealed these facts from Plaintiffs in order to induce them to enter into and continue performing under the Consulting Agreement and the separate employment agreement.

121.    The representations identified above were material statements of fact regarding existing authorization, current financial practices, the Company's present intention to perform, and the legitimacy and enforceability of the promised compensation and equity. They were not mere expressions of opinion or future hope.

122.    Plaintiffs reasonably and justifiably relied on these specific representations by: (a) entering into the Consulting Agreement; (b) committing their time, expertise, and resources to the Company; (c) accepting and performing the CEO role; (d) foregoing other consulting and employment opportunities; and (e) continuing to provide services well past the one-year and eighteen-month vesting milestones.

123.    Had Plaintiffs known that the Company, acting through Mr. Strause, would later refuse to honor the compensation terms, challenge the legitimacy of wages, and deny the vested equity interest, Plaintiffs would not have entered into or continued to perform under the Consulting Agreement and the separate employment arrangement on the terms offered.

124.    As a direct and proximate result of Mr. Strause's fraudulent misrepresentations and concealment of material facts, Plaintiffs have suffered damages, including but not limited to: unpaid wages, unpaid bonuses, lost profit distributions, the value of the vested 5% equity interest and associated distributions, and other consequential damages in amounts to be proven at trial.

125.    Injustice can only be avoided by awarding Plaintiffs monetary damages in an amount to be determined at trial, together with such other legal and equitable relief as the Court deems just and proper, including punitive damages to deter similar fraudulent conduct.

## TWELFTH CAUSE OF ACTION

### (Declaratory Judgment Act - 28 U.S.C. § 2201 – Potentium v. Company)

126.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

127.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Potentium seeks a judicial declaration that it is the rightful owner of a five percent (5%) equity interest in all Hometown entities. This equity interest fully vested on March 23, 2025, under the express terms of the Consulting Agreement.

128.    The Consulting Agreement states unambiguously that:

"Unless this Agreement is earlier terminated pursuant to Section 4(a), below, the Consultant shall receive an equity bonus in the amount of a 5% equity share in all of the Hometown entities …"

129.    *See*, **Ex. A.**

130.    Section 4(a) provides that equity entitlement is forfeited only if the Consulting Agreement is terminated for Cause, death, disability, or voluntary resignation without good reason—prior to the vesting date. *Id.*

131.    The Company did not terminate the Consulting Agreement until April 3, 2025—eleven days after the equity bonus fully vested. Thus, even assuming a valid termination for Cause (which Plaintiffs dispute), the termination occurred too late to impact equity entitlement.

132.    Accordingly, all conditions precedent under the Consulting Agreement were satisfied, and Potentium's five percent (5%) equity interest is fully vested and enforceable.

### THIRTEENTH CAUSE OF ACTION

### (Declaratory Judgment Act - 28 U.S.C. § 2201 – Mr. Houtman v. Company)

133.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

134.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Mr. Houtman seeks a judicial declaration that: (1) he is a duly elected and current member of the Board of Directors of Hometown Pharmacy Partnerships, LLC, having never been lawfully removed from that position, and (2) he is the current Chief Executive Officer of the Company, as no valid removal was effected under the Operating Agreement or his separate employment agreement.

135.    First, Section 3.02 of the Operating Agreement provides that directors may only be removed by a majority vote of the members.

136.    Mr. Houtman, as a member of the board of directors, never voted for his own removal, nor was any proper vote of the members conducted. Accordingly, no lawful action has been taken to remove Mr. Houtman as a director, and he continues to be an active member of the Board of Directors.

137.    Second, Section 4.03 of the Operating Agreement provides that any officer may be removed by majority vote of the Board of Directors, but such removal is "without prejudice to the contract rights, if any, of the person so removed."

138.    Mr. Houtman entered into a separate unwritten employment agreement with the Company on June 11, 2024, under which he serves as CEO of the Company.

139.    The Company's April 3, 2025 letter did not reference his employment agreement or his CEO role, and no proper Board vote was ever noticed or conducted. In addition, the Company did not comply with the notice and procedural requirements of Mr. Houtman's employment agreement with regards to termination. Therefore, Mr. Houtman was never lawfully removed as a director or as CEO, he continues to hold and exercise both positions.

140.    Accordingly, Mr. Houtman is entitled to a judicial declaration confirming that he is a duly elected, active member of the Board of Directors and the current CEO of the Company.

## FOURTEENTH CAUSE OF ACTION

### (Specific Performance - Potentium v. Company)

141.    Plaintiffs reassert and incorporate by reference the allegations set forth in all preceding paragraphs.

142.    Potentium fully performed its obligations under the Consulting Agreement.

143.    Mr. Houtman also conferred substantial benefit upon the Company by serving as its Chief Executive Officer. The Company knowingly accepted these services and paid Mr. Houtman as a W-2 employee until April 3, 2025.

144.    Despite repeated demands, the Company has failed and refused to issue, record, or otherwise deliver documentation of Potentium's vested five percent (5%) equity interest.

145.    The equity interest in these closely held entities is not publicly traded, lacks a ready market, and cannot be easily replaced with a monetary award. It is, by nature, unique.

146.    Potentium has no adequate remedy at law. Equity demands the issuance of formal documentation reflecting its ownership interest.

147.    Accordingly, Potentium respectfully requests this Court enter judgment by: (a) declaring that Potentium is the lawful owner of five percent (5%) of the equity in all Hometown entities; and (b) ordering Defendants to specifically perform the Consulting Agreement by issuing and delivering all necessary documents to formally memorialize and reflect its five percent (5%) ownership interest.

## JURY DEMAND

148.    Plaintiffs demand a jury trial on all issues so triable.

## PRAYER

WHEREFORE, Plaintiffs Potentium Consultants LLC and Adam Houtman pray for judgment as follows:

a)  For general and special damages according to proof;

b)  For an award of interest, including pre- and post-judgment interest, to the maximum extent allowable by law or equity;

c)  Treble damages, attorneys' fees, and costs under Wis. Stat. § 895.446;

d)  Disgorgement of all misappropriated funds;

e)  For reasonable attorneys' fees pursuant to applicable statutes;

f)  For costs of suit incurred herein; and

g)  For such other and further relief as this Court may deem just and proper.

Dated: November 26, 2025.

Respectfully submitted,

**DIEFENBACH GROUP, PLLC**

By:  */s/ John B. Diefenbach*

John B. Diefenbach
State Bar No. 24117185
E-mail: jbd@diefenbachgroup.com
539 W. Commerce St., Suite 205
Dallas, Texas 75208
Telephone: (469) 284-0862
Facsimile: (469) 284-0865

*Counsel for Potentium Consultants LLC and Adam Houtman*